UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DAVID LINGLE | CIVIL ACTION |
| VERSUS | NO: 26-261 |
| SHER GARNER CAHILL RICHTER KLEIN & HILBERT LLC, ET AL. | SECTION: N |

**ORDER AND REASONS**

Before the Court is the Defendants' Rule 12(b)(6) Motion to Dismiss First Amended Complaint, by which Defendants Sher Garner Cahill Richter Klein & Hilbert LLC, James Garner, Joshua Force, and Stuart Kottle seek dismissal of Plaintiff David Lingle's First Amended Complaint for Damages.[1] Plaintiff opposed the motion,[2] and Defendants replied.[3] Having carefully considered the parties' briefs, the record, and applicable law, the Court grants the motion to dismiss.

Also before the Court is Plaintiff's Motion for Ruling of Exceptional Circumstances,[4] which Defendants opposed.[5] This motion asks the Court to make certain findings that normally would be precluded by application of res judicata that bear on Defendants' motion to dismiss. Having carefully considered the parties' briefs, the record, and applicable law, the Court denies the motion.

---

[1] Rec. Doc. 22.
[2] Rec. Doc. 31.
[3] Rec. Doc. 35.
[4] Rec. Doc. 29.
[5] Rec. Doc. 33.

Also before the Court is Plaintiff's Motion for Leave to File Second Amended Complaint.[6] Defendants opposed the motion, and Plaintiff filed a reply in support.[7] Because the proposed amended complaint fails to cure the deficiencies in Plaintiff's claims, the amendment would be futile. Accordingly, the Court denies the motion.

## I. <u>Background</u>

This dispute, like the artifacts underlying it, has a long history. Plaintiff's great grandfather, Gaspar Cusachs, loaned a collection of historical artifacts to the Louisiana State Museum in the early twentieth century (the "Collection").[8] Plaintiff contends he has ownership rights in the Collection and that the State of Louisiana and related entities failed to return certain of these artifacts or, alternatively, to compensate him for the alleged loss and mishandling of the artifacts.[9] In March 2024, Plaintiff, proceeding *pro se*, filed suit in the Civil District Court for the Parish of Orleans against the State and various state entities and officials seeking, among other relief, return of the full Collection or compensation for the loss or damage.[10] Plaintiff also asserted a claim under Louisiana's Public Records Law, based on pre-suit record requests he made to the Museum.[11] Defendants in the present action represented the State defendants in the state-court action.[12]

---

[6] Rec. Doc. 25.
[7] Rec. Docs. 32 and 38.
[8] Rec. Doc. 13 ¶ 30.
[9] *Id.* ¶¶ 33, 34, 36, 40, 45.
[10] Rec. Doc. 22-4 ¶ 4-5.
[11] Rec. Doc. 23-3 ¶¶ 272-280.
[12] Rec. Doc. 22 at 1 ("Mr. Lingle lost his state-court suit and has now sued the lawyers who represented his adversaries in the state-court proceedings, based entirely on acts those lawyers took while representing their clients.").

During the state-court litigation, the State defendants filed a peremptory exception of no right of action, arguing that the rights Plaintiff sought to assert do not belong to him but rather to corporate entities Elysian Inc. and/or the Elysian Fields Trust, and therefore could not be litigated by Plaintiff *pro se*.[13] Following an evidentiary hearing, the state court sustained the exception and entered judgement.[14] The court ruled that Elysian Field Trust owned the Collection in trust. While Plaintiff maintained a one-percent interest in the Collection, he could not litigate on behalf of the trust or Elysian Inc., to which the trust may have transferred certain artifacts, without licensed counsel.[15]

Plaintiff appealed, and while the appeal was pending, filed the present action in federal court. In this action Plaintiff challenges several actions the Defendants undertook in the course of their state-court representation.[16] Among other claims, he alleges that Defendants made false statements regarding his ownership of the Collection[17] and his alleged unauthorized practice of law,[18] improperly withheld records,[19] made misrepresentations to the state court,[20] and used the exception of no right of action[21] and other motions to improperly seek dismissal.[22]

[13] Rec. Doc. 22-2 at 2.
[14] Rec. Doc. 22-7 at 5.
[15] *Id.* at 3-4.
[16] Rec. Doc 13 ¶¶ 1-5.
[17] *Id.* ¶ 140.
[18] *Id.* ¶ 138.
[19] *Id.* ¶ 2-3.
[20] *Id.*
[21] *Id.* ¶ 98.
[22] *Id.* ¶ 168.

## II. Legal Standard

Rule 12(b)(6) permits dismissal when a party "fail[s] to state a claim upon which relief can be granted." In reviewing such a motion, the Court accepts all well-pleaded facts as true and views them in the light most favorable to the non-moving party.[23] To survive dismissal, the pleading must contain sufficient factual matter to state a claim that is plausible on its face.[24] "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements' cannot establish facial plausibility."[25] Generally, in deciding a motion to dismiss for failure to state a claim, if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment."[26] But "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."[27] A document filed by a litigant *pro se* must be "liberally construed," and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."[28] Although the Court should be "appropriately lenient" with *pro se* parties, the "right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law."[29]

## III. Analysis

### A. The Rooker-Feldman doctrine warrants denial of Plaintiff's motion for a ruling of exceptional circumstances but does not bar the Court from ruling on the merits of Defendants' motion to dismiss.

Plaintiff moves this Court to apply an exception to the general rule of res judicata under La. Rev. Stat. Ann. § 13:4232(A), and find that Plaintiff is the legal owner of the Collection,[30] even as his appeal of the state-court ruling on the issue proceeds. Defendants invoke the *Rooker-Feldman* doctrine, arguing that the Court lacks jurisdiction to grant Plaintiff's motion because it "improperly seeks review and rejection of a final state-court judgment."[31] Because *Rooker-Feldman* implicates subject-matter jurisdiction,[32] and the relief Plaintiff seeks bears on Defendants' motion to dismiss, the Court addresses Plaintiff's Motion for Ruling of Exceptional Circumstances before reaching the merits of Defendants' motion.

Article III confines the judicial power to "cases or controversies" and distinguishes between two types of review: original and appellate.[33] Appellate jurisdiction is simply "the power of one tribunal to review the proceedings of

---

[23] *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010).
[24] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[25] *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 520 (5th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678).
[26] Fed. R. Civ. P. 12(b); *see In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).
[27] *Causey v. Sewell Cadillac–Chevrolet, Inc.,* 394 F.3d 285, 288 (5th Cir.2004).
[28] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation modified).
[29] *Hulsey v. State*, 929 F.2d 168, 171 (5th Cir. 1991) (citation modified).
[30] Rec. Doc. 29.
[31] Rec. Doc. 42 at 1.
[32] *Liedtke v. State Bar of Tex.,* 18 F.3d 315, 317 (5th Cir.1994); *see also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (federal courts have independent obligation to ensure jurisdiction exists).
[33] U.S. Const. art. III, cl. 2; The Federalist No. 82, at 493 (Alexander Hamilton) (Clinton Rossiter ed., 1961) ("The Constitution in direct terms gives an appellate jurisdiction to the Supreme Court in all the enumerated cases of federal cognizance in which it is not to have an original one.").

another."[34] While the Constitution bestows "the appellate jurisdiction absolutely on the Supreme Court,"[35] the *Rooker-Feldman* doctrine[36] recognizes that federal district courts lack jurisdiction to review and reject state-court judgments.[37] As relevant here, the doctrine applies regardless of whether the state court judgment is pending appeal because the relevant question is whether the plaintiff is asking the district court, in substance, to review and reject a state-court judgment rendered.[38]

Plaintiff does not identify any "exceptional circumstances" that would warrant this Court declining to apply res judicata. Accordingly, the Court denies his request that the Court make factual findings or rulings contrary to those made by the state court.

Notably, *Rooker-Feldman* is a narrow doctrine.[39] Thus, the fact that a lawsuit in federal court concerns conduct that occurred in state court does not in itself deprive the district court of jurisdiction.[40] Instead, the Court must identify the source of the injury and ascertain whether adjudicating such injury requires appellate review.[41]

---

[34] The Federalist No. 81, at 489 (Alexander Hamilton) (Clinton Rossiter ed., 1961).
[35] 3 Joseph Story, *Commentaries on the Constitution*, §1767 p. 648-49 (1833).
[36] *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).
[37] *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).
[38] *T.M. v. Univ. of Md. Med. Sys. Corp.*, 608 U.S. 668, 675 (2026).
[39] *Id.* at 678.
[40] *Feldman*, 460 U.S. at 482-488 (discussing the distinctions between challenge to a state court judgment and general constitutional challenge); *see Weaver v. Texas Cap. Bank N.A.*, 660 F.3d 900, 904 (5th Cir. 2011) ("The doctrine, however, does not preclude federal jurisdiction over an 'independent claim,' even 'one that denies a legal conclusion that a state court has reached.'" (quoting *Exxon Mobil*, 544 U.S. at 293)).
[41] *Johnson v. De Grandy,* 512 U.S. 997, 1005–06 (1994) (A state court judgment is challenged under *Rooker-Feldman* when the losing party seeks "what in substance would be appellate review of the state judgment.").

Here, that distinction means that to the extent Plaintiff argues the state court wrongly sustained the exception of no right of action, or seeks a finding that he owns the Collection, or is entitled to litigate rights belonging to Elysian Inc. or the Elysian Fields Trust, *Rooker-Feldman* steps in, and precludes review.[42]

In contrast, Plaintiff's allegations that Defendants made defamatory statements[43] and fraudulent misrepresentations,[44] violated public records law,[45] and violated Louisiana Rules of Professional Conduct[46] do not necessarily ask this Court to reverse or modify the state judgment merely because they arose during the state proceedings. The Court therefore has jurisdiction to determine whether these claims state a cognizable cause of action.

**B. Plaintiff fails to state a claim in his operative complaint.**

Defendants represented the State of Louisiana and its representatives in state-court actions in which Plaintiff was unsuccessful in his efforts to claim the Collection of artifacts and recover any associated damages. Plaintiff filed this suit in response to what he alleges was a conspiracy between Defendants and their clients, as they purposely distorted the facts and law to bring about a legally improper result and

---

[42] Rec. Doc. 29-2 at 2 ("Respectfully, the Parish Court's judgment granting Defendants' expectation of no right of action and dismissing Plaintiff' case was and is fatally flawed.); *id.* at 4, n. 10 ("While the statement Plaintiff "has a 1% interest" is wrong (as Plaintiff has 100% interest), the 1% would still give him a "real and actual interest" in the litigation. La CCP Art 681."); *id.* at 1, n. 1 ("Plaintiff seeks to prove his ownership now as a part of a necessary defense to Defendants' motion to dismiss and claim of res judicata."); Rec. Doc. 31 at 15 ("It was unanimously agreed by the Board that David Lingle, individually, should simply *maintain* his 100% ownership of the Collection [maintain as in keep] and file suit in his own individual capacity.").

[43] Rec. Doc. 13 ¶ 100.

[44] *Id.* ¶ 166.

[45] *Id.* ¶ 186.

[46] *Id.* ¶ 24.

directly harm Plaintiff. He alleges claims for defamation, breach of contract, detrimental reliance, abuse of process, violation of Louisiana Public Records Law, violation of the Racketeer Influenced and Corrupt Organizations Act, and fraud, all with conspiracy to do the same, as well as conspiracy to commit conversion.

The Court observes at the outset that Louisiana, like most jurisdictions, recognizes that an attorney owes no legal duty to his client's adversary when acting on the client's behalf.[47] Thus, a non-client cannot hold opposing counsel liable for malpractice or negligent breach of the Louisiana Rules of Professional Conduct.[48] The rule protects the attorney-client relationship from the chilling effect that could result if an attorney were required to balance loyalty to the client against potential liability to the client's adversary.[49]

Yet, that rule does not categorically immunize an attorney from liability to a client's adversary. An adversary may pursue an independently actionable intentional tort, but he must allege facts demonstrating "specific malice or an intent to harm" on the attorney's part.[50] Conclusory characterizations of ordinary conduct as malicious, fraudulent, or unlawful do not suffice.[51] And where the asserted intentional tort is, in substance, premised on the allegedly wrongful prosecution of the underlying proceeding, Louisiana law additionally requires a bona fide termination of that proceeding in the claimant's favor.[52]

---

[47] *Montalvo v. Sondes*, 637 So. 2d 127, 130 (La. 1994).
[48] *Id.*
[49] *Id.*
[50] *Id.*
[51] *Christian D. Chesson, PLC v. Gandy*, 419 So. 3d. 814, 825 (La. Ct. App. 2025); *Mahfouz v. Davenport*, 149 So. 3d 845, 852-53 (La. Ct. App. 2014).
[52] *Montalvo*, 637 So. 2d at 131-32.

Plaintiff cannot satisfy these requirements.[53] The state court sustained Defendant's exception of no right of action,[54] with Plaintiff's appeal from that judgment pending.[55] Thus, the underlying proceeding has neither finally terminated nor terminated in Plaintiff's favor.[56]

Independently, even if the appeal and state-court case are subsequently resolved, Plaintiff fails to plead facts plausibly demonstrating the specific malice or intent to inflict direct harm as required by *Montalvo v. Sondes*.[57] Although he repeatedly characterizes Defendants' conduct as malicious,[58] fraudulent,[59] and criminal,[60] the Court need not accept such legal conclusions as true.[61] Instead, the relevant question is whether the pleaded facts permit a plausible inference that Defendants acted with an intent to harm Plaintiff independent of their efforts to represent and protect their clients.[62]

They do not. Plaintiff alleges Defendants withheld or resisted access to public records, breached their professional obligations, made defamatory statements in their state-court filings, presented false factual and legal arguments in those filings, and, through these actions, participated in criminal conduct. Each of these alleged acts arose from Defendants' representation of their clients in the underlying

---

[53] *Hibernia Nat'l Bank v. Bolleter,* 390 So. 2d 842, 844 (La. 1980); *Robinson v. Goudchaux's,* 307 So. 2d 287, 289 (La. 1975); *Ortiz v. Barriffe,* 523 So. 2d 896, 897 (La. Ct. App.1988).
[54] Rec. Doc. 22-7 at 5.
[55] Rec. Doc. 22-13 (appeal); Rec. Doc. 31 at 9, 14, 25.
[56] Rec. Doc. 29-2.
[57] 637 So. 2d 127.
[58] Rec. Doc. 13 ¶ 3 (malicious).
[59] *Id.* at 14.
[60] *Id.* ¶ 5 (criminal).
[61] *Twombly*, 550 U.S. 544, 555.
[62] *Id.* at 556.

litigation.[63] Defendants' challenges to discovery and public-record requests, their arguments regarding Plaintiff's ownership interests and his ability to litigate these interests *pro se*, and their filing of an exception of no right of action are ordinary incidents of litigation. Plaintiff's belief that these acts were dishonest, unfounded, or taken in bad faith does not convert them into an intentional tort. Nor do Plaintiff's repeated assertions that Defendants acted with "actual malice,"[64] "intent to directly harm,"[65] or "criminal" intent[66] make their action an intentional tort. These allegations describe Defendants' state of mind without accompanying facts from which a Court could reasonably infer that the Defendants pursued any objective other than obtaining a favorable result for their client.[67]

In that respect, lawyers owe a duty of zeal in their representation.[68] Counsel representing the State could reasonably be expected to oppose discovery they believed unduly burdensome or improper, examine the scope of Plaintiff's asserted ownership interest, and challenge whether Plaintiff, proceeding *pro se*, could litigate rights belonging to the entities Elysian Inc. and the Elysian Fields Trust. *Montalvo* requires more than an adversary's characterization of litigation conduct as malicious;

---

[63] *See* Rec. Doc. 13 ¶¶ 1-5.
[64] Rec. Doc. 13 ¶¶ 2, 11, 111, 132, 136, 137, 144, 145, 147, 148, 154, 157, 177.
[65] *Id.* ¶¶ 2, 3, 111, 132, 136, 137, 144, 147, 148, 157, 172, 177.
[66] *Id.* ¶¶ 2, 3, 4, 5, 96, 98, 99, 101, 137, 144 191, 194, 195.
[67] *See Montalvo*, 637 So. 2d at 130 ("Rather, we believe it is essential for the petition to allege facts showing specific malice or an intent to harm on the part of the attorney."); *see also Landry v. Base Camp Mgmt., LLC*, 206 So. 3d 921, 926 (La. Ct. App 2016) ("As the amended petition clearly lacks any allegations suggesting [the attorney] acted with [actual] malice or an intent to cause direct harm…, we conclude that the amended petition fails to allege facts sufficient to state a cause of action in intentional tort.") (citation modified).
[68] *See* La. Model Rules of Pro. Conduct 1.3, cmt 1 (La. Bar. 2026) ("A lawyer must also act…with zeal in advocacy upon the client's behalf.").

otherwise, virtually every contentious lawsuit could produce a second lawsuit against the prevailing party's attorneys.[69] Accordingly, to the extent Plaintiff's claims seek to impose liability because Defendants advanced positions adverse to him or allegedly breached professional codes of conduct while doing so, those claims fail.

Plaintiff's claims fail for another independent reason: he fails to plead any actionable claim under substantive law.

### 1. Defamation and Conspiracy to Defame (Count 1).

Plaintiff alleges that Defendants defamed him through statements made in their state-court filings.[70] Plaintiff targets Defendants' alleged assertions that he engaged in unauthorized practice of law, engaged in "sham transactions" to circumvent the requirement that juridical entities appear through counsel,[71] and sought to litigate interests belonging to Elysian Inc. or the Elysian Fields Trust.[72] Plaintiff alleges some of these statements accused him of criminal conduct and were therefore defamatory per se.[73]

Under Louisiana law, a plaintiff asserting defamation ordinarily must establish defamatory words, publication, falsity, malice, and resulting injury.[74] Louisiana also recognizes a qualified privilege for statements made by attorneys during judicial proceedings.[75] This privilege applies where the challenged statement

---

69 *See Montalvo*, 637 So. 2d at 130.
70 Rec. Doc. 13 ¶ 145.
71 *Id.* ¶ 99.
72 *Id.*
73 *Id.* ¶ 100.
74 La. Civ. Code Ann. art. 2315; *see Breen v. Holmes,* 2016-1591, 236 So. 3d 632, 638 (La. Ct. App. 2017).
75 *Freeman v. Cooper*, 414 So. 2d 355, 359 (La. 1982).

is pertinent to the proceeding and made with a reasonable or probable basis and without malice.[76] The privilege reflects the need to permit attorneys sufficient latitude to advocate their clients' positions without exposing themselves to a subsequent defamation action merely because their opponent disputes the allegations advanced in court.[77]

As alleged, the challenged statements fall within the scope of the qualified privilege. Plaintiff expressly recognized that Defendants made the statements in their court filings while representing the State.[78] The statements concerned the very matters before the court—who owned the Collection and whether Plaintiff, proceeding *pro se*, could litigate rights belonging to Elysian, Inc. or the Elysian Fields Trust. These were not unrelated statements, but rather, went directly to the exception of no right of action. The court ultimately concluded that Plaintiff could not litigate the interests belonging to Elysian, Inc. or the Elysian Fields Trust without counsel.[79] While that ruling does not establish the truth of every factual characterization Defendants made, it does demonstrate that Defendants had a reasonable basis for advancing a position Plaintiff now characterizes as defamatory.

Plaintiff does not plausibly allege facts sufficient to overcome the privilege by merely characterizing the statements as being made with malice.[80] Characterizations do not substitute for facts permitting a reasonable inference that Defendants made

---

[76] *Id.*
[77] *Id.*
[78] Rec. Doc. 13 ¶¶ 98, 100.
[79] Rec. Doc. 22-7 at 2-3.
[80] Rec. Doc. 13 ¶ 136.

the statements for a purpose independent of advocating their client's position. Accordingly, the challenged statements fall within Louisiana's qualified privilege, and Plaintiff fails to state a claim for defamation. Because he fails to state a claim for the underlying intentional tort, his derivative conspiracy-to-defame claim fails too.[81]

**2. Breach of Contract and Detrimental Reliance (Counts 2 and 3).**

Plaintiff's contract-based claims rest on a theory that, by becoming licensed attorneys, Defendants entered enforceable obligations with members of the public, including Plaintiff, to comply with the Rules of Professional Conduct, the lawyer's oath, court rules, and other professional standards.[82] The fundamental problems with this theory, however, are (1) Louisiana law requires the formation of a contract for breach of contract, and Plaintiff alleges no such contract,[83] and (2) a lawyer's affirmation of the model rules or other professional standards does not create an enforceable obligation.[84] Nor does a lawyer's affirmation of professional standards create a third-party beneficiary.[85]

---

[81] *Ross v. Conoco, Inc.*, 828 So. 2d 546, 552 (La. 2002) ("The actionable element in a claim under this Article is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetrate and which they actually commit in whole or in part."); *see also Barkerding v. Whittaker*, 263 So. 3d 1170, 1193 (La. Ct. App. 2018) (dismissing conspiracy claims upon finding no cause of action for underlying torts).

[82] Rec. Doc. 13 ¶ 24.

[83] *Payphone Connection Plus, Inc. v. Wagners Chef, LLC*, 276 So. 3d 589, 595 (La. Ct. App. 2019) ("The "elements of a breach of contract claim are the existence of a contract, the party's breach thereof, and resulting damages.").

[84] *Penalber v. Blount*, 550 So. 2d 577, 581 (La. 1989) ("As such, not even the Rules of Professional Conduct create actionable duties for negligent injury of a client's adversary or negligent breach of professional obligations which might run in favor of his client's adversary.").

[85] *Claborne v. Hous. Auth. of New Orleans*, 401 So. 3d 669, 680 (La. Ct. App. 2024) ("The most basic requirement of a stipulation *pour autrui* is that the contract manifest a clear intention to benefit the third party; absent such a clear manifestation, a party claiming to be a third party beneficiary cannot meet his burden of proof.").

Plaintiff's detrimental-reliance claim similarly fails. To establish a detrimental reliance claim, a plaintiff must prove (1) the defendant made a promise or representation to the plaintiff; (2) the defendant knew or should have known that the promise or representation would induce the plaintiff to rely on it to his detriment; (3) the plaintiff relied on the promise or representation to his detriment; (4) the plaintiff was reasonable in relying on the promise; and (5) the plaintiff suffered damages as a result.[86] "The doctrine of detrimental reliance is not favored in Louisiana law, and all claims must be examined strictly and carefully."[87] Plaintiff does not identify any promise or representation Defendants made to him, as an attorney's licensure does not create a personal promise to him.[88] More broadly, "'it cannot be seriously contended'" that a lawyer's breach of the Rules of Professional Conduct "'creates an actionable duty enforceable in tort.'"[89]

Counts Two and Three therefore fail to state a claim upon which relief can be granted. With no underlying violation, the conspiracy claims also fail.

**3. Abuse of Process (Count 4).**

Plaintiff alleges that Defendants abused process by filing an exception of no right of action, a motion to stay, a motion to amend, and related pleadings for the purpose of obtaining dismissal of his state-court action.[90] To state an abuse of process

---

[86] *Harris v. Bd. of Supervisors of Cmty. & Tech. Colls.*, 340 So. 3d 1121, 1126 (La. App. Ct. 2022); *see also* La. Civ. Code Ann. art. 1967; *Suire v. Lafayette City-Par. Consol. Gov't*, 907 So. 2d 37, 59 (La. 2005).
[87] *Harris*, 340 So. 3d at 1126.
[88] *Panepinto v. Panepinto*, 384 So. 3d 1089, 1095 (La. Ct. App. 2024) ("Similarly, it is plain that an attorney's breach of a rule imposing a duty relating to the general public would not, absent very unusual circumstances, vest a non-client with a delictual cause of action against an attorney.").
[89] *Id.* (quoting *Montalvo*, 637 So. 2d at 130).
[90] Rec. Doc. 13 ¶ 165.

claim, a plaintiff must show an ulterior motive and an improper use of process.[91] In other words, an abuse of process is where "a party attempts to obtain a result not proper under the law."[92] Here, Plaintiff alleges Defendants used the exception and related motions to obtain dismissal of the state-court-action.[93] But a dismissal is precisely the relief these procedures are designed to seek.[94] Plaintiff's own allegations establish that Defendants used the challenged procedures to obtain relief for their clients through the ordinary judicial process.[95] Plaintiff's unsupported belief that Defendants pursued this relief maliciously or through improper methods does not transform an otherwise regular use of process into abuse of process. Count Four therefore fails to state a claim upon which relief can be granted. With no underlying violation, the conspiracy claim fails too.[96]

**4. Louisiana Public Records Violation (Count 5).**

Plaintiff next alleges that Defendants violated Louisiana's Public Records law by obstructing or withholding access to public records.[97] His theory depends on a state-court order directing him to route future discovery requests through Defendants.[98] The order directed Plaintiff to proceed "by traditional means of

---

[91] *Panepinto*, 384 So. 2d at 1094; *Waguespack, Seago & Charmichael v. Lincoln*, 768 So. 2d 287, 290-91 (La. Ct. App. 2000).
[92] *Id.*
[93] Rec. Doc. 13 ¶ 165.
[94] *Waguespack, Seago & Carmichael (A PLC)*, 768 So. 2d at 292 ("Even if this court was to assume *arguendo* that the allegations set forth by defendants against plaintiffs stemmed from an ulterior purpose … the plaintiffs have not alleged any facts that substantiate the irregularity of the process itself.").
[95] Rec. Doc. 13 ¶ 165 ("They intended…to have *Cusachs v State* dismissed.") (citation modified).
[96] *Ross*, 828 So. 2d at 552.
[97] Rec. Doc. 13 ¶ 189.
[98] *Id.* ¶ 174.

discovery, through Defendants' counsel."[99] This order, and the requests that followed, do not transform Defendants into public-records custodians under state law,[100] nor does the order transfer Plaintiff's discovery requests into public records requests.[101] Count Five, including the conspiracy claim, is dismissed for Plaintiff's failure to state a claim upon which relief can be granted.

**5. RICO Claim (Claim 6).**

Plaintiff also alleges that Defendants committed wire fraud, obstruction, theft, public-record offenses, and other predicate claims through pleadings, arguments, discovery, and communications while representing the State.[102] These offenses, along with others, Plaintiff alleges, create an ongoing RICO violation.[103] RICO provides a civil cause of action for anyone injured in his business or property by reason of a violation of 18 U.S.C. § 1962.[104] Plaintiff alleges a violation of all four subsections of § 1962. Subsection (a) makes it unlawful for any person who has received income derived from a pattern of racketeering activity or through collection of an unlawful debt to use that income to support any enterprise engaged in interstate or foreign commerce. Subsection (b) makes it unlawful for any person, through a pattern of racketeering activity or through collection of an unlawful debt, to acquire or maintain any interest in or control of an enterprise engaged in interstate or foreign travel.

---

[99] *Id.* ¶ 92.
[100] La. Rev. Stat. § 44:32(C)(1)(d), 44:32(C)(2)(a), 44:33(B)(1), 44:35(A)-(B).
[101] *Terrebonne Par. Consol. Gov't v. Duval, Funderburk, Sundbery, Richard & Watkins, APLC*, 340 So. 3d 1099, 1106 (La. Ct. App. 2022) (firms were "not transformed into public bodies solely as a result of their legal representation").
[102] Rec. Doc. 13 ¶ 192.
[103] *Id.* ¶ 194
[104] 18 U.S.C. § 1964(c); *Beck v. Prupis*, 529 U.S. 494, 495 (2000).

Subsection (c) makes it unlawful for any person employed by or associated with any enterprise engaged interstate or foreign commerce to conduct or participate in the enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt. And, subsection (d) makes it unlawful to conspire to violate subsections (a), (b), or (c).

All of these provisions require a plaintiff to allege a pattern of racketeering activity. Section 1961(1) contains an exhaustive list of acts of racketeering, also known as "predicate acts."[105] For pleading purposes, conclusory characterization of conduct as criminal is insufficient to allege predicate acts under RICO.[106] Rather, a plaintiff must plead two or more racketeering acts and allege specific facts establishing the existence of an enterprise.[107] Plaintiff fails to do that here. He merely pleads litigation conduct, such as defending the State against his claims in state court and receiving and responding to discovery requests on the State's behalf, and assigns criminal labels to it. For example, Plaintiff's wire fraud allegations arise from Defendants impeding recovery of the full Collection and accepting records requests on behalf of their clients pursuant to court order, despite wire fraud requiring, and Plaintiff failing to plead, specific intent to deprive another person of "money or property by means of false or fraudulent pretenses, representations or promises."[108] Plaintiff also alleges obstruction of justice arising from Defendants "overloading,

---

[105] *Beck*, 529 U.S. at 497 n.2.

[106] *Elliott v. Foufas*, 867 F.2d 877, 880-81 (5th Cir. 1989).

[107] *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 441 (5th Cir. 2000); *see also Old Time Enters., Inc. v. Int'l Coffee Corp.*, 862 F.2d 1213, 1217-18 (5th Cir. 1989) ("a RICO plaintiff must plead specific facts that establish an association that exists other than merely to commit the predicate acts that show pattern.").

[108] *See* Rec. Doc. 14 at 9-10; *United States v. Greenlaw*, 84 F.4th 325, 344 (5th Cir. 2023).

confusing, and misleading the trier of fact with unlawfully-altered and/or otherwise false facts and law that were intended to antagonize, harass, and frighten Plaintiff."[109] He makes only conclusory allegations, and, notably, he had an opportunity in state court to respond to Defendants' filings and the court nevertheless ruled against him.[110] Similarly, Plaintiff's theft allegations involve conduct prior to Defendants' involvement in the state court proceeding and their legal defense of the State—not conduct by Defendants that amounts to theft.

*Snow Ingredients, Inc. v. SnoWizard, Inc.*[111] is instructive. There, parties engaged in extensive commercial litigation, after which one litigant sued its adversaries and their attorneys under RICO based on, among other things, trademark filings, court submissions, and allegedly obstructive conduct in several civil cases.[112] The Fifth Circuit affirmed dismissal because the complaint alleged a series of obstructive and bad-faith litigation acts, but failed to allege "any actual criminal activity as a predicate act."[113] The court warned that treating litigation activity as a federal crime would undermine the policies of access to the courts and finality underlying the judicial system.[114]

Plaintiff's allegations face the same challenge here. He characterizes Defendants' pleadings, arguments, discovery conduct, and responses to his requests as wire fraud, obstruction, theft, and other criminal acts.[115] But calling those acts

---

[109] Rec. Doc. 14 at 12; *see also* Rec. Doc. 13 ¶ 117.
[110] *See* Rec. Doc. 14 at 10-14.
[111] 833 F.3d 512 (5th Cir. 2016).
[112] *Id.* at 519-20, 523-24.
[113] *Id.* at 525.
[114] *Id.*
[115] Rec. Doc. 13 ¶ 192.

"criminal," "fraudulent," or "obstructive" does not transform routine litigation conduct into predicate offenses for purposes of RICO. As in *Snow Ingredients*, the pleaded facts may describe wrongful litigation conduct that, if proven, could be addressed through sanctions or other court-imposed discipline, but not independent criminal activity sufficient to constitute a pattern of racketeering. Accordingly, Count Six fails to state a claim upon which relief can be granted.

**6. Fraud (Count 7).**

Plaintiff's fraud claim rests on his contention that Defendants conspired with the State to commit theft of the Collection by fraudulently concealing the artifacts and related public records and knowingly advancing false factual and legal positions in the state-court proceedings.[116] In Louisiana, fraud is "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other."[117] An "essential element" of fraud is actual or probable damage.[118] "[F]raud must be pled with particularity, and mere conclusions of fraud," without the particular circumstances alleged to constitute fraud, are insufficient.[119] Here, Plaintiff's fraud claim is not adequately pleaded. "[A]dvancing a purportedly weak legal argument does not constitute, by itself, a false statement or fraudulent course of conduct."[120] Nor does Plaintiff allege that he relied upon the challenged misrepresentations such that he

---

[116] *Id.* ¶¶ 199-201.
[117] La. Civ. Code Ann. art. 1953.
[118] *Emery v. Ben*, 390 So. 3d 952, 960 (La. Ct. App. 2024).
[119] *La. Health Serv. & Indem. Co. v. Gupta*, 407 So. 3d 851, 865 (La. Ct. App. 2025).
[120] *United States ex rel. Guth v. Roedel Parsons Koch Blache Balhoff & McCollister*, 626 F. App'x 528, 532 (5th Cir. 2015).

was damaged. Instead, he repeatedly alleges that he knew Defendants' statements were false and contested them.[121] His alternative theory—that he relied upon Defendants' bar admission as a representation that they would comply with the Louisiana Rules of Professional Conduct—merely repackages the contract and detrimental reliance theories rejected above.[122] Count Seven therefore also fails to state a claim upon which relief can be granted.

**7. Conspiracy to Commit Conversion (Count 8).**

Finally, Plaintiff alleges that Defendants engaged in a conspiracy to convert Collection artifacts by conspiring with the State to withhold them.[123] His proposed Second Amended Complaint adds the allegation that Defendants exercised "complete authority and control" over the Collection.[124] These allegations are conclusory, and the Court is not required to accept legal conclusions as true.[125] Under Louisiana law, conversion entails "an intentional dispossession and/or exercise of dominion or control over the property of another in denial of or inconsistent with the owner's rights."[126] Plaintiff's own allegations, however, repeatedly identify the State as the entity that possessed, located, and refused to return the artifacts—even in the proposed amended complaint.[127] The factual allegations do not allege that Defendants possessed, transferred, sold, stored, or otherwise exercised dominion over the Collection. Moreover, this claim was a central issue in the state-court proceedings, which

---

[121] Rec. Doc. 13 ¶ 210.
[122] *Id.* ¶ 208.
[123] *Id.* ¶ 215.
[124] Rec. Doc. 25-2 ¶ 236.
[125] *Iqbal*, 556 U.S. at 678.
[126] *Melerine v. O'Connor*, 135 So. 3d 1198, 1203 (La. Ct. App. 2014).
[127] Rec. Doc. 13 ¶¶ 30-45; *see* Rec. Doc. 25-2 ¶¶ 30-45.

resulted in a judgment determining, after an evidentiary hearing and other process, that the Collection was owned in trust and Plaintiff could not litigate the rights of the entity seeking the return of the Collection. As discussed above, the Court cannot revisit this issue and, Plaintiff lacks a right to litigate the ownership rights of the Collection. Accordingly, Plaintiff fails to state a claim upon which relief can be granted in Count Eight.

**C. Plaintiff's proposed Second Amended Complaint would not cure the deficiencies.**

Federal Rule of Civil Procedure 15(a)(2) instructs courts to "freely give leave" to amend a complaint "when justice so requires."[128] But leave is not automatic.[129] A court may deny leave for, among other reasons, futility of amendment.[130] An amendment is futile when the amended complaint would still fail to survive a Rule 12(b)(6) motion.[131]

That is the case here. Plaintiff describes his proposed Second Amended Complaint as "virtually identical" to his First Amended Complaint, explaining that he principally added twenty-six paragraphs to support his theory of a "continuing tort."[132] Those additions relate to March and April 2026 public-records requests and additional allegations that Defendants continued to withhold records from him.[133] He

---

[128] Fed. R. Civ. Proc. 15(a)(2)
[129] *Davis v. United States*, 961 F.2d 53, 57 (5th Cir. 1991).
[130] *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000).
[131] *Id.* at 873.
[132] Rec. Doc. 25-4 at 4.
[133] *Id.* at 5.

also added allegations that Defendants and the State "asserted their dominance and exercised complete authority and control" over the Collection.[134]

These amendments do not cure the deficiencies identified above. Additional allegations that Defendants continuously, maliciously, or intentionally withheld records do not alter *Montalvo's* requirement that a plaintiff plead facts demonstrating an intentional tort and specific intent to cause direct harm. Nor do the amendments allege a contract between Plaintiff and Defendants; identify a promise by Defendants that Plaintiff could reasonably rely; transform ordinary litigation into abuse of process; or supply facts alleging unlawful acts necessary to state a racketeering claim.

Plaintiff's public-records allegations fare no better. The proposed complaint alleges that Plaintiff sent Defendants additional requests in March and April 2026 and characterizes Defendants' responses as continuing violations of Louisiana's Public Records Law.[135] But additional allegations do not cure the underlying defect: Defendants are private attorneys that represented the State. Plaintiff does not plausibly allege that they became statutory custodians merely because discovery requests—no matter how many—were routed through them.

Finally, Plaintiff's additional allegations concerning Defendants' allegedly false statements do not cure the deficiencies in the defamation and fraud claims: they do not plausibly overcome the litigation privilege or allege reasonable reliance.

---

[134] *Id.* The Court addressed the addition of this statement above and found that it did not cure the deficiency in Plaintiff's claim of conspiracy to commit conversion.
[135] *Id.*

In short, the proposed Second Amended Complaint adds some detail, but does not cure the deficiencies in Plaintiff's claims. Because the proposed complaint would remain subject to dismissal under Rule 12(b)(6), amendment would be futile, and the motion to amend is denied.

## IV. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Defendants' Rule 12(b)(6) Motion to Dismiss First Amended Complaint[136] is **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Ruling of Exceptional Circumstances[137] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Second Amended Complaint[138] is **DENIED** because the proposed amendment would be futile.

**NEW ORLEANS, LOUISIANA**, this 30th day of October, 2026.

Anna St John

ANNA ST. JOHN
UNITED STATES DISTRICT JUDGE

---

[136] Rec. Doc. 22.
[137] Rec. Doc. 29.
[138] Rec. Doc. 25.